FILED
2017 Mar-29  PM 04:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

LARRY GLASS,                          )
                                      )
        Plaintiff,                 )
                                      )
vs.                                   )          Case No. 5:15-cv-2115-TMP
                                      )
CAROLYN W. COLVIN,                    )
Commissioner of Social Security,      )
                                      )
        Defendant.                 )
                                      )

## MEMORANDUM OPINION

### Introduction

The plaintiff, Larry Glass, appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB").   Mr. Glass timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).   The parties have consented to the exercise of dispositive jurisdiction by the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

Mr. Glass was 46 years old at the time of the Administrative Law Judge's

("ALJ") decision, and he has some college education[1] and has worked at a variety of newspaper jobs, including as a writer, editor, and photographer.  (Tr. at 26, 51). Mr. Glass claims that he became disabled on February 1, 2010, due to Guillian-Barré Syndrome ("GBS") with related polynuerophathy in the lower extremities, bipolar disorder, seizures, anxiety disorder, visual deficits, tremors (Parkinsonism), memory loss, impaired judgment, and obsessive compulsive disorder.   He also has a history of alcohol abuse.   (Tr. at 23, 232).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).   The first step requires a determination of whether the claimant is "doing substantial gainful activity."   20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).   If he is, the claimant is not disabled and the evaluation stops.   *Id*.   If he is not, the Commissioner next considers the effect of all of the claimant's physical and mental impairments combined.   20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.   *Id*.   The decision depends upon the medical

---

[1]      At his psychological evaluation with Dr. John Rogers, he reported having a college degree in journalism.   (Tr. at 461).

evidence in the record.   *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).   If the claimant's impairments are not severe, the analysis stops.   20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).   If the claimant's impairments fall within this category, he will be found disabled without further consideration. *Id.*   If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made, and the analysis proceeds to the fourth step.   20 C.F.R. §§ 404.1520(e), 416.920(e).   Residual functional capacity is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his impairments.   20 C.F.R. § 404.1545(a).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.   20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).   If the claimant can still do his past relevant work, the claimant is not disabled and the evaluation stops.   *Id.*   If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.*   Step five requires the court to consider the claimant's RFC, as well as the

claimant's age, education, and past work experience, in order to determine if he or she can do other work.   20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).   If the claimant can do other work, the claimant is not disabled.   *Id.*   The burden of demonstrating that other jobs exist which the claimant can perform is on the Commissioner; and, once that burden is met, the claimant must prove his inability to perform those jobs in order to be found to be disabled.   *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

The analysis involves a further step in cases where the claimant is addicted to drugs or alcohol.   Congress amended the Social Security Act in 1997 to provide that a claimant "shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Pub. L. No. 104–121, § 105(a)(1), (b)(1), 110 Stat. 847, 852, 853 (codified as amended at 42 U.S.C. § 423(d)(2)(C) (1997)).   Consequently, under the amendment, known as the Contract with America Advancement Act ("CAAA"), if an ALJ determines that a claimant is disabled and that drug or alcohol abuse is involved, the ALJ "must determine whether drug addiction or alcoholism is a contributing factor material to

the determination of disability." 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1).   The

ALJ is required to determine which of the plaintiff's physical and mental limitations

that supported the original disability determination would remain a limitation or

impairment absent the claimant's drug or alcohol use.   20 C.F.R. §§ 404.1535(b)(3),

416.935(b)(3).   If the plaintiff would no longer be disabled if he stopped using

drugs or alcohol, then the substance abuse is considered a "contributing factor

material to the determination of [his] disability," and he will have failed to meet his

burden of showing that he is disabled.   20 C.F.R. §§ 404.1535(b)(2)(i),

416.935(b)(2)(i); 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J).   The Eleventh Circuit

Court of Appeals has stated that the claimant bears the burden of proving that the

substance abuse "is not a contributing factor material to his disability

determination."   *Doughty*, 245 F.3d 1274 at 1280, citing *Brown v. Apfel*, 192 F.3d

492 (5th Cir. 1999) and *Mittlestedt v. Apfel*, 204 F.3d 847 (8th Cir. 2000).

Applying the sequential evaluation process, the ALJ found that Mr. Glass has

not been under a disability within the meaning of the Social Security Act from the

alleged date of onset through the date of her decision.   (Tr. at 37).   She first

determined that Mr. Glass had not engaged in substantial gainful activity since

February 1, 2010, the alleged date of his onset.   (Tr. at 22).   At the second step of

the analysis, the ALJ found that the plaintiff had severe impairments of GBS with associated polyneuropathy[2] involving his bilateral lower extremities, a bipolar I disorder, an anxiety disorder, alcohol dependence, and a history of seizures. (Tr. at 23.) She further found non-severe impairments of double vision/diplopia. (*Id.*) The ALJ also determined that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 23). The ALJ found Mr. Glass's statements concerning the intensity, persistence, and limiting effects of his symptoms not to be entirely credible. (Tr. at 32). Even so, the ALJ found that the impairments, *in combination with the alcohol abuse*, are disabling. (Tr. at 25).

She determined that the claimant has the residual functional capacity to perform a limited range of sedentary work. (Tr. at 25). The ALJ further found that the claimant should be subject to the following limitations: that he can occasionally lift and/or carry ten pounds and frequently lift and/or carry less than ten pounds; he can stand and/or walk in combination, with normal breaks, for at least two hours during an eight-hour workday; he can frequently perform fine and gross

_____

2       The Merck Manual describes polyneuropathy as "the simultaneous malfunction of many peripheral nerves throughout the body." It has many causes, including Guillain-Barré Syndrome, and it manifests as an impairment of strength and sensation in the hands and feet. See http://www.merckmanuals.com/home/brain,-spinal-cord,-and-nerve-disorders/peripheral-nerve-disorders/polyneuropathy (as viewed March 29, 2017).

manipulations bilaterally; he can occasionally climb ramps and stairs and should never climb ladders, ropes, or scaffolds.   The claimant can frequently balance and stoop and occasionally kneel, crouch, and crawl; he should avoid concentrated exposure to extreme heat, extreme cold, wetness, and working in areas of vibration; he should avoid exposure to industrial hazards including working at unprotected heights, working in close proximity to moving dangerous machinery, the operation of motorized vehicles and equipment, and near large open bodies of water, flame or fire.   He can perform simple, routine tasks requiring no more than short, simple instructions and simple work-related decision making with few workplace changes. However, the ALJ determined that, considering all the impairments *along with the alcohol abuse*, the claimant would be unable to maintain concentration, persistence or pace sufficiently to be able to complete an eight-hour workday and 40-hour work-week on a regular and sustained basis.  (Tr. at 25).   The ALJ went on to explain that claimant's testimony that he could not concentrate or tolerate stress were credible when he was abusing alcohol, but that the symptoms waned when the claimant was not abusing alcohol.   The ALJ went on to discuss that, in the absence of the alcohol abuse, claimant's ability to work improved significantly.  (Tr. at

25-26).   Similarly, the ALJ noted that Mr. Glass's physical symptoms of tremors

and lack of balance dissipated during periods when he was not drinking.   (*Id.*)

According to the ALJ, Mr. Glass is unable to perform any of his past relevant

work and that he was a "younger individual" at the date of alleged onset, he has a

high school education, and is able to communicate in English, as those terms are

defined by the regulations.   (Tr. at 26).   She determined that "transferability of

skills is not material to the determination of disability" in this case.   (*Id*.)   The ALJ

found that, considering Mr. Glass's age, education, work experience, and residual

functional capacity based on the impairments *including* the substance abuse, there

are no jobs that exist in significant numbers in the national economy that the

claimant can perform.   (Tr. at 26).

The ALJ next found that, if the claimant stopped the substance use, the

claimant would continue to have severe impairments, but that the impairments

would not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart

P, Appendix 1.   (Tr. at 27).   The ALJ examined the remaining impairments and the

degree to which they would limit Mr. Glass's ability to work and found that, absent

the alcohol abuse, he would have the residual functional capacity to perform a full

range of sedentary work with the following limitations:   he can occasionally lift

and/or carry ten pounds and frequently lift and/or carry less than ten pounds; he can stand and/or walk in combination, with normal breaks, for at least two hours during an eight-hour workday, and he can sit, with normal breaks, for up to eight hours during an eight-hour workday; he can frequently perform fine and gross manipulations bilaterally; he can occasionally climb ramps and stairs and should never climb ladders, ropes, or scaffolds.  The claimant can frequently balance and stoop and occasionally kneel, crouch, and crawl; he should avoid concentrated exposure to extreme heat, extreme cold, wetness, and working in areas of vibration; he should avoid exposure to industrial hazards including working at unprotected heights, working in close proximity to moving dangerous machinery, the operation of motorized vehicles and equipment, and near large open bodies of water, flame, or fire.  He can perform simple, routine tasks requiring no more than short, simple instructions and simple work-related decision-making with few workplace changes; he can have occasional interactions with co-workers and supervisors and no interactions with members of the general public.  (Tr. at 30-31).   The ALJ  found that there are a significant number of jobs in the national economy that he is capable of performing, such as document preparer, surveillance systems monitor, and table worker.  (Tr. at 37).   The ALJ concluded her findings by stating that substance

abuse disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use; accordingly, she found that the claimant is not disabled under the Social Security Act.   (*Id.*)

## Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one.   The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.   *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).   Substantial evidence is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004), quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997). The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.   *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).   The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.   *Id.*   "The substantial

evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"   *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).   Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence.   *Miles*, 84 F.3d at 1400.   No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal.   *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## Discussion

Mr. Glass alleges that the ALJ's decision should be reversed and remanded because the ALJ's finding is not supported by substantial evidence.   (Doc. 8). More specifically, the plaintiff argues that, because he ended his alcohol abuse and has been sober since April 24, 2013, (tr. at 297), until at least the date of his hearing

on April 4, 2014, the prior history of alcohol use cannot be considered as a contributing factor to his current disability.  (Doc. 8, p. 4).[3]  The Commissioner argues that the plaintiff failed to meet his burden of proving he is disabled, and that the ALJ's decision was supported by substantial evidence.  (Doc. 10).

A.  *Medical History*

The evidence presented indicates that Mr. Glass's medical history was as follows on the date of his hearing:

Mr. Glass was first diagnosed with bipolar disorder when he was in his twenties, which caused manic periods and periods of severe depression.  At times, he was suicidal.  He also suffers from an unspecified anxiety disorder that causes him to have panic attacks.  He has been recently prescribed lithium, Seroquel, and Depakote for his psychiatric disorders.  He was diagnosed with Guillain-Barré Syndrome in 2012, which causes numbness and tingling in his feet and fingers, and

---

[3]      Plaintiff seems to take the position that, because he is now sober, based on his having completed a rehabilitation program and testifying that he no longer abuses alcohol, the ALJ's finding is without a basis in the evidence or in the law.  To be clear, however, the ALJ determined that the plaintiff is unable to perform gainful work and would meet the requirements of the SSA to receive disability insurance payments when he was abusing alcohol, but that his abilities improved when alcohol abuse stopped, leaving him no longer disabled thereafter.  If plaintiff's argument is that he should receive benefits at least for the time when he abused alcohol and was thus unable to work, that is exactly the result that the CAAA prevents.  Rather, the court reads his argument to be that the ALJ incorrectly determined that, after his alcohol abuse ended, he was no longer disabled and could perform a limited range of sedentary work.  He appears to argue that this post-sobriety determination is not supported by substantial evidence.

which causes him to drop things, to lose his balance, and to fall.   He was prescribed daily physical and occupational therapy, after which he was performing all activities of daily living (ADLs), and he was able to walk 850 feet without an assistive device. He had good range of motion and only slight loss of muscle strength in the upper extremities, and moderate loss of strength in the lower extremities.   At the time of the hearing, he was no longer seeing a neurologist, but was still reporting symptoms of GBS.

Mr. Glass also has a history of having had *petit mal* seizures for which he takes medication, but had not had a seizure for at least two years prior to the hearing. When asked at the hearing to rank his disabilities, Mr. Glass listed a lack of concentration and fear of failure as first, followed by a fear of being wrong, and a fear of being in a confined area.   He also said that getting to work on time would be a big problem for him.

He has been in rehabilitation facilities for treatment of alcoholism on at least three occasions.[4]   Plaintiff has abused alcohol for more than a decade, but reports that he remained sober for about nine years after one rehabilitation.   In August of

---

[4]      His testimony at the hearing was not entirely clear whether his sobriety date was April 2013 or August 2013, but counsel asserts that the April date, when Mr. Glass completed an out-patient rehabilitation program, is the correct date.   Nothing in the ALJ's opinion, or in this court's decision, however, turns on the date of sobriety.

2012, he completed another period of rehabilitation at Pearson Hall, graduating from the in-patient program on August 24, 2012.   (Tr. at 423-425).   After relapses, he entered an out-patient alcohol treatment program in April 2013, and completed the intensive outpatient program on April 24, 2013.   He testified at the ALJ's hearing in April 2014 that he had remained sober as of the date of his hearing.

In August of 2010, Mr. Glass was treated for an overdose of Klonipin, which was accompanied by alcohol.   He denied that the incident was a suicide attempt. He was referred to an inpatient psychiatric hospital for detoxification and was treated at Parkridge Valley Hospital.   (Tr. at 547 - 612).

In September of 2011, Dr. Kim treated the claimant after a bout with weight loss, nausea, and vomiting.   Dr. Kim noted that Mr. Glass had bipolar disorder, and had been depressed, but also noted that he showed good judgment, had a normal mood and affect, was active and alert, was oriented to time, place and person, and showed normal memory.   (Tr. at 318).

Mr. Glass was diagnosed with GBS in January of 2012, having complained of weakness in his legs, and he was referred to physical therapy.   (Tr. at 323, 642). On January 12, 2012, Mr. Glass was admitted to the Healthsouth Chattanooga Rehabilitation Hospital and, after eight days of physical and occupational therapy,

he was discharged with the notation that his functional status was improved, he was independent in ADLs, and could ambulate 850 feet without an assistive device. (Tr. at 323).    His discharge instructions directed that he could walk independently and could climb stairs using two rails, could get in and out of a tub, and could prepare meals, although he should take rest breaks.  (Tr. at 346-47).  After his discharge, Mr. Glass reported to his primary physician, Dr. Ronald Calhoun, that he was "doing much better."  (Tr. at 399).  Although additional physical therapy was prescribed, Mr. Glass indicated that he did not have insurance coverage for the therapy and would instead join a gym and follow the exercise regime on his own.  (Tr. at 342).

In April of 2012, he was treated by Dr. Bhushan, who noted that Mr. Glass was complaining of trouble sleeping.  Dr. Bhushan noted "overall mood stable, interactions positive, appetite stable, no mania, no psychosis, no si/hi [suicidal ideations, homicidal ideations]."  (Tr. at 378).

In August of 2012, Mr. Glass was admitted to Pearson Hall for detoxification from alcohol.   (Tr. at 424-25).  He reported that he had abused alcohol since before 2001, but that he had managed to remain sober from 2001 until 2009.  He was discharged after 17 days of treatment with a good prognosis.  (*Id.*).

In September of 2012, Mr. Glass underwent a consultative psychological evaluation conducted by Jon Rogers, Ph. D.   The plaintiff reported to Dr. Rogers that he had attempted suicide multiple times, including earlier that month.   He also described depression, weight loss, insomnia, fatigue, difficulty with concentration and decision making, anxiety, panic attacks, obsessive compulsive disorder, and issues with anger. (Tr. at 460-61).   He also described his GBS, telling the psychologist that because of the GBS he could no longer type, had fallen that morning, had headaches, stomachaches, blackouts, dizziness, seizures, palpitations, bowel disturbances, nightmares, insomnia, tension, panic, fatigue, diarrhea, and pain in his neck, back, elbow, hips and feet.  (Tr. at 461).   Dr. Rogers noted that Mr. Glass was dressed appropriately, nicely groomed, and alert, with average motor activity; however, he described the plaintiff as nervous, with a shaky voice, appearing anxious and depressed.   (Tr. at 462).   Mr. Glass was oriented as to time, place and person; was able to perform a serial subtraction task and correctly answered three math problems.   He was able to repeat 6 digits forward and 4 backward and could recall 3 objects after five minutes in a memory test.   His judgment and insight were ranked as "fair." (Tr. at 463).   Dr. Rogers opined that Mr. Glass's mental impairment was "severe," that his ability to understand, remember,

and carry out instructions in a work setting would be moderately impaired, and that his ability to respond appropriately to work pressures, supervision, and coworkers would be severely impaired.   (Tr. at 465-66).

The plaintiff also was evaluated by a consulting medical physician, Dr. Snehaprabha Reddy, in October 2012.   Plaintiff reported that he had GBS, had no feeling in his toes, and a poor grip, but that he was still attending physical therapy every six weeks.   Dr. Reddy's physical examination resulted in a report that the plaintiff was alert, oriented, coherent, and cooperative; that he had vision of 20/25 in the left eye and 20/30 in the right eye without his glasses.   His extremities showed no pitting edema, cyanosis, or clubbing.   His neurological evaluation resulted in findings that the plaintiff was "unable to perform tandem gait," in that he was losing balance, and he had a positive Romberg sign.   His grip was 4/5 and finger dexterity was within normal limits.   Muscle strength in the upper and lower extremities was measured at grade 4/5.   The doctor reported impressions of "Post Guillian-Barre syndrome," and "history of bipolar manic depressive disorder."   (Tr. at 468-69).

On January 3, 2013, Mr. Glass visited Dr. Bhushan, complaining that his son had stolen his medication and had attempted suicide.   The doctor noted that the plaintiff was "mildly shaky/tremulous, mildly disheveled," but that he was alert and

oriented and that his mood was "okay."   His psychosocial problems were ranked as moderate.   (Tr. at 488-90).   On March 4, 2013, Mr. Glass visited Dr. Bhushan again, complaining that he was having anxiety stemming from his son's drug abuse. The doctor observed a tremor and anxiety.

In April of 2013, the plaintiff again participated in an "intensive outpatient program" for alcohol rehabilitation.   He completed a 17-day program at Family Life Center on April 24, 2013, and he testified that he has remained sober after that date.

The only medical records documenting Mr. Glass's condition after his 2013 rehabilitation program are visits with Dr. Calhoun, a family physician that he had seen for at least a few years.   In June 2013, he told Dr. Calhoun that he needed to find a new psychiatrist, and that he was not sleeping.[5]   He was told to restart taking Klonipin for anxiety.   (Tr. at 619).   At a visit in July 2013, he told Dr. Calhoun that he seemed "to be doing alright," was sleeping "ok" and that his anxiety was "up and down."   The doctor noted that he "seems to be doing well" and "reports no problems with medication."   (Tr. at 618).   In August of 2013, he reported to Dr. Calhoun that he was "doing pretty good" and had "no new problems."   (Tr. at 616). On September 30, 2013, Mr. Glass reported during a follow-up visit that he was "ok"

---

[5]   The psychiatrist that Mr. Glass had seen before was no longer accepting the insurance plan that Mr. Glass had, although Mr. Glass remained covered by insurance.

with no new problems, and that his mood was "stable"; however, he continued to report insomnia and fatigue.   The doctor continued prescribing Depakote, lithium, Seroquel, and Klonipin.   (Tr. at 614).

### B. Substantial Evidence and Plaintiff's Burden of Proof

The court reviews the plaintiff's appeal from the denial of Social Security disability payments to determine whether the Commissioner's decision is supported by substantial evidence, and whether the correct legal standards were applied. Substantial evidence has been determined to be more than a scintilla, and is "such relevant evidence as a reasonable mind might accept to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).   In a case where the plaintiff is a substance abuser, the court must review the evidence to determine whether the claimant's substance abuse is a "material contributing factor" to his inability to work.   It is the plaintiff who bears the burden of proving "that his alcoholism or drug addiction is not a contributing factor material to his disability determination."   *Taylor v. Colvin*, No. CA 13-0062-C, 2013 WL 6410401 *13 (S.D. Ala. 2013).

Viewing the record as a whole, it is clear that the plaintiff has suffered from bipolar disorder and anxiety since he was in his twenties, and that he was able to

work as a newspaper writer, editor, photographer, and in other aspects of the newspaper business, until 2010.   He reports that he was sober from 2001 until 2009. He was abusing alcohol, and possibly prescription drugs, at least much of the time between 2010 and April 2013, when he completed his final rehabilitation program. The record indicates that when he was diagnosed with Guillian-Barré Syndrome in 2012, he was abusing alcohol, and that at the times when he was reporting the most severe symptoms, he was abusing alcohol.   The only medical records that come after his sobriety date show that he was no longer seeing a psychiatrist for his mental disorders, even though he indicated that he intended to find a new psychiatrist, that he was not seeing any specialist for his GBS, and that he was reporting to his primary physician that he was doing "alright," with "no new problems," but that he was having some fatigue and insomnia.   As found by the ALJ, this is substantial evidence that his mental disorders were not disabling after he obtained sobriety.

Plaintiff argues that ALJ failed to consider the consultative psychologist's evaluation that the plaintiff's mental impairment would be "severe."   (Doc. 8, p. 4 n.10).   However, plaintiff has not demonstrated that Dr. Rogers' evaluation, which was conducted on September 28, 2012, reflected his ability to function during a period of sobriety.   (Tr. at 460-65).   He apparently told Dr. Rogers that his last

drink was on August 4, 2012.   However, he had been court-ordered to attend an

addiction program in August 2012, and he concedes that he relapsed afterwards.

More important, however, is that Dr. Rogers' assessment of the plaintiff's mental

impairment as severe is not consistent with other observations that Mr. Glass was

able to function independently.   Indeed, Dr. Rogers' own assessment found the

plaintiff was "was dressed appropriately, nicely groomed, and alert, with average

motor activity," that he "was oriented as to time, place and person."   Dr. Rogers

noted that the plaintiff could perform memory and mathematics tasks, and that his

judgment and insight were ranked as "fair." (Tr. at 463).   The plaintiff points to his

own testimony regarding the effect of sobriety on his bipolar disorder.   He stated his

bipolar disorder is "more evident" when he is sober, in that "without the use of

alcohol, I can tell when one mood is coming on and ups and downs, when they're

coming."   He did not testify that sobriety had exacerbated existing problems or

created any new ones, however.

  The ALJ determined that the claimant's credibility was compromised by the

fact that he had applied for and received unemployment benefits in 2011, after he

lost his newspaper job.   (Tr. at 23).   The ALJ further determined that the claimant

did not meet the listing for his peripheral neuropathy because the objective medical

evidence did not show "disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, gait and station."   (Tr. at 24).   These findings were supported by all of the medical records that post-date the plaintiff's date of sobriety.   (Tr. at 614-19).

The ALJ noted that none of the listings for mental impairment were met because the claimant had only "mild to moderate restriction," based on the claimant's own function report that showed he could dress, bathe, use the toilet, take care of his son, do laundry, make the bed, sweep the floor, and engage in woodworking.   (Tr. at 24).   This finding is supported by the function report, and by his own testimony at the hearing that he suffered more from a lack of motivation, and from fear, than from other limitations.   (Tr. at 90-91).   It is also supported by Dr. Calhoun's observations of the plaintiff's mental condition after his April 2013 sobriety date.   On the whole, the ALJ correctly determined that his condition was materially improved when he was sober.

The ALJ went on to note that the medical records showed a "physical decline" during the periods in which Mr. Glass was using excessive amounts of alcohol or prescription pills, but that, when not abusing substances, the claimant had good attention and concentration, good memory, normal judgment and insight.    The

objective medical records support this finding.   Mr. Glass did not testify that any symptoms of his bipolar disorder got worse after his date of sobriety.    Plaintiff concedes that records from just before he entered rehab in 2013 (a time when he was drinking excessively) show his psychiatric symptoms were worsening, but he draws from these medical notations that "in no way can these records be said to support the court's conclusions that plaintiff's bipolar disorder has improved since his sobriety." (Doc. 8, p. 17).   This court agrees with the ALJ that the evidence of worsening symptoms before sobriety and the improvement of those symptoms after sobriety supports a conclusion that the alcohol abuse was a contributing factor material to Mr. Glass's disability.[6]

Accordingly, the ALJ's decision that Mr. Glass's substance abuse is a contributing factor material to his disability is supported by substantial evidence. Importantly, the ALJ also found that when the alcohol abuse ceases, the plaintiff is not disabled, but can perform a limited range of sedentary work, notwithstanding his physical impairments.   The plaintiff has failed to meet his burden of showing that,

---

[6]     The court also rejects plaintiff's argument that the ALJ failed to fairly and fully develop the record.   There is no absence of medical evidence here, and no indication that a second consultative examination of Mr. Glass would be necessary.   Plaintiff faults the ALJ for not accepting in full Dr. Rogers' consultative evaluation, and at the same time wants to argue that Dr. Rogers' evaluation was not sufficient.

when sober, he remains unable to work.  His allegations that his psychiatric disorders and his GBS caused him to be unable to do even a limited range of sedentary work is not supported by the record.

### Conclusion

Upon review of the administrative record, and considering all of Mr. Glass's arguments, the undersigned magistrate judge finds the Commissioner's decision is due to be and hereby is AFFIRMED.

DONE this 29th day of March, 2017.


_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE